IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELA HELKOWSKI<br>individually and on behalf of all others<br>similarly situated<br><br>        **Plaintiff,**<br><br>v.<br><br><br>**SEWICKLEY SAVINGS BANK**<br><br>        **Defendant.** | )<br>)<br>)    2:09-cv-633<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

October 15, 2009

      Presently before the Court is the MOTION TO DISMISS AMENDED COMPLAINT, with brief in support, filed by Defendant Sewickley Savings Bank (Document Nos.21 and 22), and the BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, filed by Plaintiff Daniela Helkowski (Document No. 23).

## BACKGROUND

      On May 21, 2009, Plaintiff Daniela Helkowski ("Plaintiff") commenced this lawsuit by filing a Complaint (Doc. No. 1) alleging that Defendant failed to comply with the notification provision of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, ("EFTA" or "the Act"), required before a bank can impose a transaction fee for a customer's use of an automated teller machine ("ATM").

      On July 22, 2009, Defendant Sewickley Savings Bank filed a Motion to Dismiss and Brief in Support pursuant to Federal Rule of Civil Procedure 12(b)(6), in which it contends that the Complaint fails to state a claim for which relief can be granted under the decisions of the

United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* --U.S.--, 129 S. Ct. 1937 (2009). In the alternative, Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, and filed a concise statement of material facts. (Doc. Nos. 10 & 11).  On July 29, 2009, Plaintiff filed a brief in opposition to the motion to dismiss.  (Doc. No.14).  On August 10, 2009, Plaintiff filed her response to the concise statement of material facts.  (Doc. 17).

On August 24, 2009, this Court granted respective motions to dismiss in *Dragotta v. West View Savings Bank*, Civ.A.No. 2:09-cv-627, 2009 WL 2612318 (W.D.Pa. 2009) and *Dover v. Union Building and Loan Savings Association*, Civ.A.No. 2:09-cv-708, 2009 WL 2612355 (W.D.Pa. 2009).  Both *Dragotta* and *Dover* alleged identical violations of the EFTA and were premised upon virtually identical facts as those contained in the matter *sub judice*.   On August 26, 2009, Plaintiff filed a Motion for Oral Argument and For Leave to file a Supplemental Briefing in Opposition to Defendant's motion to dismiss.  (Doc. No. 18).  On August 30, 2009, and prior to the entry of an order on the motion for oral argument, Plaintiff filed an Amended Complaint, adding sixteen (16) new paragraphs and eighteen exhibits ostensibly in an attempt to avoid an order granting Defendant's motion to dismiss.

The issues have been fully briefed by the parties and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, and the relevant case law, the Motion to Dismiss Plaintiff's Amended Complaint will be granted.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).   Each allegation must be simple, concise, and direct.  Fed. R. Civ. P. 8(d).  Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "'contemplates the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (*quoting* 5 Wright & Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint.  The court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the United States Supreme Court made clear in *Twombly*, the factual allegations included in a complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

Recently, the United States Supreme Court reaffirmed *Twombly* in *Ashcroft v. Iqbal*, -- U.S.--, 129 S. Ct. 1937 (2009), and expressly extended the *Twombly* pleading standard to matters beyond the realm of antitrust law.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 129 S.Ct. at 1949.  A claim has facial plausibility when a plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant has acted unlawfully.  *Id.* Satisfying this plausibility standard requires more than suggesting the sheer possibility that a defendant acted unlawfully.  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (*citing Twombly*, 550 U.S. at 557, 127 S.Ct. 1955)(internal quotation marks omitted).

As the Supreme Court noted, two principles underlie the decisions in both *Twombly* and *Iqbal*. The first principle is the tenet that while a court must accept as true all factual allegations contained in a complaint, it does not have to accept either legal conclusions or conclusory statements. *Id.* In illustration of this point, the Court noted that while Rule 8 "makes a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1950. The second principle is that only a plausible claim for relief survives a motion to dismiss. *Id.* More importantly, determining whether a complaint states a plausible claim for relief is a context -specific task that requires a court to draw upon its judicial experience and common sense. *Id.*

It is important to note that nothing in *Twombly* or *Iqbal* has changed other pleading standards for a Rule 12(b)(6) motion to dismiss. The United States Supreme Court did not impose a new heightened pleading requirement, but reaffirmed that Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (*citing Twombly*, 550 U.S. at 555). Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999); *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993). However, courts are permitted to

consider matters of public record, exhibits attached to the complaint, and undisputably authentic documents attached to the motion to dismiss without converting the motion to one for summary judgment. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 (3d Cir. 2006).

## ANALYSIS

In keeping with the principles underlying the Supreme Court's decisions in *Twombly* and *Iqbal*, the Court will begin by distinguishing those pleadings that are factual allegations from those that, because they are no more than conclusions, are not entitled to the assumption of truth. The following background is drawn from the Amended Complaint and the factual allegations therein are accepted as true for the purpose of this Opinion. The facts underpinning Plaintiff's claim are straightforward and not contested. On or about May 6, 2009, Plaintiff made an electronic fund transfer at Defendant's ATM machine located at 531 Broad Street, Sewickley, PA 15143. *See generally*, Doc. No. 19. Defendant is a state chartered mutual savings bank. *Id.* at ¶13. At the time of the transaction, Plaintiff did not maintain an account with Defendant. *Id.* at ¶16. Plaintiff was charged a "terminal owner fee" of $1.50 for the transaction. *Id.* at ¶16. At the time of the transaction, there was no notice posted "on or at" the Defendant's ATM to apprise consumers that a fee would be charged for the use of the ATM. *Id.* at ¶ 18.

For its part, Defendant argues that, notwithstanding the facts as alleged by Plaintiff, it is not subject to liability under the Act as a result of its good faith compliance with the EFTA. The issue before the Court is purely a question of law, to wit: does the Plaintiff state a plausible claim for relief? Said another way, does the factual content of the Amended Complaint permit the Court to infer more than the mere possibility of misconduct? The Court concludes that it does not.

The federal government enacted the EFTA as part of the comprehensive Consumer Credit Protection Act (the "CCPA"), Pub.L. No. 95-630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601 *et seq.*).  The EFTA protects individual consumer rights by "provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).  One of the EFTA's provisions requires that operators of automated teller machines ("ATMs") provide notice of fees charged to consumers for use of the machine.  It is this provision, 15 U.S.C. § 1693b(d), under which Plaintiff's claim is premised.  Specifically, 15 U.S.C. § 1693b(d) requires:

**(3) Fee disclosures at automated teller machines**

   **(A) In general**

   The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--

      **(i)** the fact that a fee is imposed by such operator for providing the service; and

      **(ii)** the amount of any such fee.

   **(B) Notice requirements**

      **(i) On the machine**

      The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

      **(ii) On the screen**

      The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is

> initiated and before the consumer is irrevocably committed to completing the transaction....
>
> **C) Prohibition on fees not properly disclosed and explicitly assumed by consumer**
>
> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--
>
> > **(i)** the consumer receives such notice in accordance with subparagraph (B); and
> >
> > **(ii)** the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

The EFTA defines an "automated teller machine operator" as a person who operates an ATM and "is not the financial institution that holds the account" of the consumer using that ATM. 15 U.S.C. § 1693b(d)(3)(D)(I). Accordingly, Defendant is the ATM operator as that term is defined in the EFTA.

Defendant's position rests upon two factual predicates, neither of which are in dispute. The first is that during the course of the alleged ATM transaction and prior to having a transaction fee assessed, notice was provided to Plaintiff on the screen of the ATM that such a fee would be levied and also that the notice reflected the actual amount of the fee. This is the "on the screen" notification required by 15 U.S.C. § 1693b(d)(3)(B)(ii). The essence of Plaintiff's Complaint is that Defendant failed to provide an "on the machine" notice, as required by 15 U.S.C. § 1693b(d)(3)(B)(i), and that such a failure violates the EFTA because the Defendant was required to provide both the "on the machine" and the "on the screen" notices. *See generally*, Doc. Nos. 1, 19. Plaintiff has not alleged that she did not receive the "on the screen" notice, and the Court will not infer that she was not provided such notice. The second factual predicate is that Defendant is an FDIC insured state-chartered savings bank that is not a member bank of the

Federal Reserve System. Plaintiff specifically pleads as much. Doc. No. 19 at ¶ 13.

Keeping in mind the question of whether Plaintiff has sufficiently alleged a plausible claim by alleging sufficient facts from which the Court may draw the reasonable inference that the Defendant has acted unlawfully, the Court turns to the inter-relationship between the Federal Reserve Board, the FDIC, and state-chartered non-Federal Reserve member banks with respect to the notice requirements of the EFTA.

The EFTA grants to the Board of Governors of the Federal Reserve System ("the Board") the authority and responsibility to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1693b(a). Accordingly, the Board implemented various administrative regulations codified at 12 C.F.R. § 205 ("Regulation E"). On the issue of ATM notice, Regulation E provides:

> (b) *General*. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
> (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2) Disclose the amount of the fee.

12 C.F.R. § 205.16(b). To this extent, this general notice provision of Regulation E mirrors the language of the EFTA with respect to the requirement to inform consumers of ATM transaction fees, namely that a fee will be imposed and the amount of the fee when compared with 15 U.S.C. § 1693b(d)(3)(A). There is one term of significance, however, included in Regulation E that is not found in the actual statutory language regarding that which an ATM operator must do to comply with the notification requirement. 12 C.F.R. § 205.16(c) requires:

> (c) *Notice requirement*. To meet the requirements of paragraph (b) in this section, an

8

automated teller machine operator must comply with the following:

(1) *On the machine*.  Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

   (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or

   (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; **and**

(2) *Screen or paper notice*.  Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

*Id.* § 205.16(c)(emphasis added).  The inclusion of the word "and" connecting subparagraph (c)(1), the "on the machine" notification requirement, with subparagraph (c)(2), the "screen or paper" notification requirement, makes clear that in order to satisfy the Federal Reserve Board's regulations implementing the EFTA, an ATM operator is required to provide more than one form of notice, namely a posted notice on or at the machine *and* a form of notice on the screen or on paper.  An "on the screen" (or a "screen or paper" notice to use the terminology of Regulation E) alone is not enough.  This specific provision of Regulation E provides the foundation of Plaintiff's Amended Complaint.  Plaintiff asserts that the Defendant's conduct, to wit: the failure to provide both forms of notice as specifically required in 12 C.F.R. §§ 205.16(c) and (e), was unlawful.  In fact, Plaintiff pleads as much in the Amended Complaint.  *See* Doc. No. 19 at ¶¶ 6 & 7.  For the foregoing reasons, however, the Court finds that Defendant complied with the applicable provisions to which it was subject, and considers the assertion otherwise to be conclusory.

Beginning with the statute itself, there is no conjunctive term connecting the equivalent

language in the EFTA. *See*, 15 U.S.C. §1693b(d)(3)(B)(i) and (ii). Further, the Federal Reserve Board is not the only agency charged with enforcing the EFTA. The EFTA contains express provisions regarding the enforcement of the requirements. *See* 15 U.S.C. § 1693o. In particular, the EFTA assigns compliance enforcement to the Board of Directors of the FDIC in the case of a state chartered bank, like Defendant, that is insured by the FDIC but is not a member bank of the Federal Reserve System. 15 U.S.C. § 1693o(1)(C)[1]. To that end, one of the enumerated purposes of the FDIC is to "make examinations of and to require information and reports from depository institutions." 12 U.S.C. §§ 1819 & 1820, *see also*, 12 U.S.C. § 1818(n).

Of particular significance, 12 U.S.C. § 1818(t), defines the authority of the FDIC to take enforcement actions with respect to state non-Federal Reserve member banks as the equivalent of the Federal Reserve Board's authority with respect to member banks.[2] For the purpose of enforcing the EFTA, in other words, what the Federal Reserve Board is to member banks of the

---

[1] This is consistent with the provisions of the Federal Deposit Insurance Act itself, which identifies the FDIC as the appropriate Federal Banking agency with oversight of Defendant as a state non-Federal Reserve member insured bank. 12 U.S.C. § 1813(q)(3). This is yet one example of the general tenet that the enforcement responsibilities of the Federal Reserve Board generally only extend to state-chartered banks that are members of the Federal Reserve System and to certain foreign banking organizations, and that other federal regulators are responsible for examining banks, thrift institutions, and credit unions under their jurisdiction and for taking enforcement action.

[2] 12 U.S.C. § 1818 says in relevant part:
(t) Authority of FDIC to take enforcement action against insured depository institutions and institution-affiliated parties

(4) Corporation's powers; institution's duties
    For purposes of this subsection--

    (A) The Corporation shall have the same powers with respect to any insured depository institution and its affiliates as the appropriate Federal banking agency has with respect to the institution and its affiliates;

Federal Reserve system, the FDIC is to non-member state chartered banks like Defendant.  *See also*, 12 C.F.R. Appendix B to Part 205 (indicating that the FDIC is the federal agency responsible for enforcing Regulation E on nonmember insured banks).

FDIC examiners and claims agents, appointed by the FDIC Board of Directors, conduct regular examinations of insured state chartered non-member banks, and have the authority to, *inter alia*, "administer oaths and affirmations, to take or cause to be taken depositions, and to issue, revoke, quash, or modify subpenas and subpenas duces tecum", while the FDIC itself "is *empowered to make rules and regulations with respect to any such* proceedings, claims, *examinations*, or investigations." 12 U.S.C. § 1818(n)(emphasis added).  Pursuant to that responsibility, the FDIC promulgates a Compliance Examination Handbook that is specifically "designed as a reference tool for Compliance examination staff to use when conducting Compliance and Community Reinvestment Act (CRA) examinations and other supervisory activities."  *See*, Compliance Examination Handbook, p. I-1.1, available online via the FDIC website at http://www.fdic.gov/regulations/compliance/manual/index_pdf.html.  It should be noted that the Compliance Examination Handbook was recently revised in June 2009.  Prior to that revision, the June 2006 Compliance Examination Handbook was in effect, and was the operative Handbook at the time of the transaction complained of in the Amended Complaint.

Part VI of the June 2006 Handbook includes a section specifically devoted to compliance with the requirements of the EFTA.  *See* pp. VI-2.1 - VI-2.18 appended hereto as Attachment A. This section is organized into subheadings that provide explanations of the requirements corresponding with the section numbers of Regulation E.  With respect to compliance with the EFTA regarding notification of ATM transaction fees, the Handbook includes the following

11

guidance:

> Disclosures at Automated Teller Machines - §205.16
>
> Section 205.16 requires disclosures at ATMs, before a fee can be charged to the consumer. This applies when a consumer uses an ATM that is operated by a financial institution or other company that does not hold the consumer's account.
>
> In these cases, the operator of the ATM must disclose the fact that a fee will be charged for providing EFT services or a balance inquiry, AND the amount of the fee. The ATM operator may post this information in prominent and conspicuous location on or at the ATM. **Alternatively**, the operator may provide the notice on the ATM screen or on paper, before the consumer is obligated to pay a fee.
>
> An ATM operator may only impose a fee on a consumer initiating an EFT service or balance inquiry if the consumer is provided with the required notices AND elects to continue the transaction after receiving the notice.

Attachment A at p. VI-2.8.  Clearly, the inclusion of the word "alternatively" is significant and changes the notice requirements with which an ATM operator must comply when compared to the specific language of Regulation E noted above.  Instead of explicitly requiring both an "on the machine" notice and a "screen or paper notice" consistent with 12 C.F.R. § 205.16, the language of the Handbook gives the ATM operator the choice of either posting the notice that a fee will be charged and the amount of the fee in a prominent and conspicuous location, or in the alternative, providing such notice on the screen or in paper form.

     Under the EFTA, liability is not imposed in those cases in which a bank has acted in good faith "in conformity with any interpretation ... by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor..."  15 U.S.C. § 1693m(d)(1).  In this case, the Court finds that Defendant's ATM conformed with the then-current Compliance Examination Handbook issued by the FDIC by providing on the screen notice (*see* Handbook at p. VI-2.8).

The FDIC has the statutory responsibility to conduct compliance examinations on nonmember banks and to appoint examiners in order to conduct those examinations (12 U.S.C. § 1818(n)), the EFTA specifically delegates enforcement of its provisions with respect to nonmember banks to the FDIC (15 U.S.C. § 1693o), and the Federal Reserve Board itself, through its own implementing regulation, identifies the FDIC as the enforcing agency for nonmember banks (12 C.F.R App. B).

Taken as a whole, the Amended Complaint fails to allege sufficient facts for the Court to infer that Defendant acted unlawfully.  Resolving the disputed facts in favor of the Plaintiff, namely that there was no notification posted at or on the machine at the time of the transaction, and further disregarding the legal conclusions and conclusory assertions of the Amended Complaint, Plaintiff has failed to sufficiently allege a plausible claim.  According to the FDIC's own Compliance Examination Handbook, compliance on the part of Defendant may have been satisfied by performing one of two alternatives, either providing "on the machine" notice or "on the screen" notice.   Plaintiff has simply alleged that Defendant failed to accomplish one of those two alternatives.

Plaintiff opposes the motion to dismiss by making two arguments.  Initially, Plaintiff argues that the Division of Consumer and Community Affairs of the Federal Reserve Board is the "*sole* 'authorized official or employee of the Federal Reserve System" that is authorized to render official interpretations of the EFTA pursuant to section 915(d).  *See* Doc. No. 23 at § II.  Plaintiff cites Appendix C of 12 C.F.R. Part 205 as authority for this argument.  This argument fails to acknowledge the enforcement mechanisms of the EFTA and the scope of the Federal Reserve Board's authority.  Within both the statutory language of the EFTA itself (15 U.S.C. §

1693o), the regulations promulgated by the Board of Governors of the Federal Reserve System pursuant to the EFTA (12 C.F.R. § 205 Appendix B), and the Federal Deposit Insurance Act (12 U.S.C. § 1818(t)), it is the FDIC that is responsible for enforcing the EFTA with respect to state chartered non-Federal Reserve member banks.  Plaintiff further argues that the FDIC June 2009 Compliance Examination Handbook includes a material change to that section regarding EFTA, a change that now mirrors the corresponding language of 12 C.F.R. § 205.16(c)(1) and (2). Under the express language of the revised Handbook, an ATM operator is now expressly required to provide both types of notice, and gone is any use or reference to the term alternative options.  This Court returns to the language of the EFTA itself.  The section describing the good faith compliance with any rule, regulation, or interpretation, 15 U.S.C. § 1693m(d), notes that no liability is imposed in cases of good faith compliance "notwithstanding that after such act, omission, or failure has occurred, such rule, regulation, approval, or model clause is amended, rescinded, or determined by judicial or other authority to be invalid for any reason." Accordingly, the revisions to the Compliance Handbook, effective in the month following the transaction at issue here, have no impact on the Court's decision.

**CONCLUSION**

For the reasons hereinabove set forth, Defendant's Motion to Dismiss will be granted.

An appropriate Order follows.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: R. Bruce Carlson, Esquire
Email: bcarlson@carlsonlynch.com
Gary F. Lynch
Email: glynch@carlsonlynch.com

Dorothy A. Davis, Esquire
Email: ddavis@eckertseamans.com
April M. Hincy, Esquire
Email: ahincy@eckertseamans.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIELA HELKOWSKI** | ) | |
| individually and on behalf of all others | ) | |
| similarly situated | ) | 2:09-cv-633 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **SEWICKLEY SAVINGS BANK** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT

AND NOW, to wit, this 15th day of October, 2009, in accordance with the foregoing Memorandum Opinion, Defendant's MOTION TO DISMISS is **GRANTED** and Plaintiff's First Amended Class Action Complaint, be and the same is hereby **DISMISSED.**

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   R. Bruce Carlson, Esquire
      Email: bcarlson@carlsonlynch.com
      Gary F. Lynch
      Email: glynch@carlsonlynch.com

      Dorothy A. Davis, Esquire
      Email: ddavis@eckertseamans.com
      April M. Hincy, Esquire
      Email: ahincy@eckertseamans.com